UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DONDRELL TYRELL THOMAS,

        Plaintiff,                       Case No. 2:15-cv-79

v.                                           Honorable Robert Holmes Bell

S. KING, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Corrigan, Malette, MacLaren, Teneyck, Daily, Bigger, Smith, Woods, Hubbard, Bender, and Hough. The Court will serve the complaint against Defendants S. King, Anderson, Brown, Cusick, Knipe, Golleday, Unknown King, Williams, and Cushman.

**Discussion**

      I.        Factual allegations

Plaintiff Dondrell Tyrell Thomas, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against numerous prison officials. Specifically, Defendants include Corrections Officer S. King, Grievance Coordinator C. Anderson, Inspector J. Corrigan, Unknown Malette, Warden D. MacLaren, Prison Counselor Jillion Brown, Corrections Officer Unknown Cusick, Corrections Officer Unknown Knipe, Corrections Officer Unknown Golleday, Corrections Officer Unknown King, Corrections Officer Unknown Teneyck, Deputy Warden Unknown Daily, Corrections Officer Unknown Bigger, B. Smith, Warden J. Woods, P. Hubbard, Corrections Officer Unknown Williams, Unknown Bender, Inspector Unknown Hough, and Prison Counselor Unknown Cushman.

      In Plaintiff's complaint, he alleges that while he was confined at the Kinross Correctional Facility (KCF) on April 7, 2015, Defendant S. King walked into the bathroom stall while Plaintiff was urinating and touched his buttock. Defendant S. King looked over Plaintiff's shoulder and asked if he needed any help. Plaintiff responded by exclaiming, "What the fuck!" Another prisoner observed the incident and laughed. After Plaintiff left the bathroom, he asked Defendant Cushman if Defendant S. King had a right to behave in that manner. Defendant Cushman told Plaintiff that if he told anyone about the incident, he would be transferred back to the Alger Correctional Facility (LMF). After Defendant Cushman finished talking to Plaintiff, Defendant S. King told Plaintiff that he could do anything he wanted to him because Plaintiff was in prison. Plaintiff filed a grievance regarding this matter.

Three days later, on April 10, 2015, Defendant Corrigan interviewed Plaintiff. Plaintiff was subsequently interviewed by the Michigan State Police and made an official statement. On April 14, 2015, Defendant S. King called Plaintiff a "rat bitch." On April 20, 2015, Defendant Anderson called Plaintiff into his office and threatened that if Plaintiff did not sign off on his grievance, he would make Plaintiff's life a living hell at KCF. On May 11, 2015, Defendant Anderson told Plaintiff that because he would not learn, he was going to write a ticket on Plaintiff. Plaintiff walked away. Later that day, Plaintiff told Defendant Corrigan that he was being retaliated against and was fearful for his life. Plaintiff stated that he had two witnesses, prisoners D. Crowley and Floyd G. Perkins. Plaintiff states that as a result of him revealing his witnesses, prisoner Crowley was transferred to another facility. Plaintiff states that Defendant Corrigan did not appear to believe his story, and asked him to repeat his allegations over and over again.

On May 11, 2015, Plaintiff received a misconduct ticket from Defendant Anderson, which had been written on April 30, 2015. Plaintiff was moved out of his housing unit, but then was moved back again. Plaintiff believes that this was so Defendant S. King could continue harassing him. Plaintiff wrote grievances on May 1 and May 20. Deputy Warden Harwood subsequently told Plaintiff that as a result of filing grievances, he was being transferred to either LMF or URF. Plaintiff sent a note to the Warden seeking assistance. While Plaintiff was waiting to hear from the Warden, he was approached by some prisoners on the yard who wanted to injure him. Plaintiff learned from these prisoners that Defendant S. King had put a hit out on him in order to deter Plaintiff from pursuing his claims against Defendant S. King. Plaintiff states that the only reason he was not harmed was because he knew some influential prisoners who stopped the hit.

On May 28, 2015, Plaintiff contacted a Sergeant and explained the situation. The Sergeant placed Plaintiff in segregation. When Plaintiff spoke to Defendants Daily and Malette, they stated that his story regarding Defendant S. King's sexual misconduct was not credible. Defendants Daily and Malette also stated that Plaintiff had a misconduct coming and that his security level would be increased. Plaintiff was then moved to a "dry cell" where the toilet wouldn't flush, so Plaintiff was forced to tolerate the odor of his own bodily waste, which caused him to feel nauseated.

On June 11, 2015, Plaintiff was transferred to URF. On June 18, 2015, Defendant Brown informed unit officers of Plaintiff's allegations against Defendant S. King. The officers told Plaintiff that Defendant Brown had told them to keep Plaintiff out of the yard and day rooms, and to prevent Plaintiff from participating in activities, so Plaintiff would be receiving a lot of misconduct tickets. Defendants Williams, Golladay, Knipe, Cusick, and Unknown King, who is related to Defendant S. King, began to write tickets on Plaintiff.

Plaintiff alleges that during his placement at URF, he received many false misconduct tickets for alleged rule violations. Plaintiff states that officers would laugh at him about receiving the tickets because they knew the tickets were "bogus." Plaintiff asserts that Defendants Williams, Golladay, Knipe, Cusick, and Unknown King engaged in a conspiracy to retaliate against Plaintiff by continually subjecting him to false misconduct convictions. Plaintiff states that inmates Allan #656633, Conley #645840, Lamont #347175, and Buttler #160557 witnessed this conduct. Plaintiff states that on June 21, 2015, a night when Defendant Unknown King was not working, a ticket was written in Unknown King's name asserting that he had witnessed Plaintiff violating a housing rule. Plaintiff alleges that one of the above named officers told Plaintiff's cellmate that it was not a good idea to remain in a cell with Plaintiff and, three days later, Plaintiff was moved to another cell.

When Plaintiff contacted Defendants Woods and Hubbard, Plaintiff simply received more bogus tickets. Defendant Williams explained that all of Plaintiff's problems were because the people that he was filing grievances on had friends and family working in the prison who would lie, cheat, and steal to protect each other. The next day, Defendant Knipe told Plaintiff that all of the officers in the Upper Peninsula are tied together through family and friends. Plaintiff states that he has been told that it would not take much to have another prisoner "take him out," or for officers to take him to segregation and beat him to death, and then cover it up by claiming self-defense or making it look as if Plaintiff took his own life. During this period, Defendant Brown called Plaintiff a snitch in front of other prisoners and told Plaintiff that he could not have a job or attend religious services.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459

U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Corrigan, Malette, MacLaren, Teneyck, Daily, Bigger, Smith, Woods, Hubbard, Bender, and Hough were personally involved in the activity which forms the basis of his claims. The only roles that Defendants Corrigan, Malette, MacLaren, Teneyck, Daily, Bigger, Smith, Woods, Hubbard, Bender, and Hough had in this action involve the denial of administrative grievances or the failure to act. Defendants Corrigan, Malette, MacLaren, Teneyck, Daily, Bigger, Smith, Woods, Hubbard, Bender, and Hough cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Corrigan, Malette, MacLaren, Teneyck, Daily, Bigger, Smith, Woods, Hubbard, Bender, and Hough are properly dismissed for lack of personal involvement.

The court concludes that Plaintiff's claims against Defendant S. King for sexual harassment and retaliation are nonfrivolous and may not be dismissed on initial review. Nor are Plaintiff's retaliation claims against Defendants Anderson, Brown, Cusick, Knipe, Golleday, Unknown King, Williams, and Cushman properly dismissed on initial review.

In addition, on September 8, 2015, Plaintiff sent the court a letter seeking an "emergency injunction." *See* ECF No. 9. In the letter, Plaintiff indicates that prison officials were preventing him from mailing out paperwork which had been requested by the court. A review of the docket sheet indicates that the only paperwork requested by the court was an amended complaint on the proper form. Because Plaintiff has now filed his amended complaint, this motion is properly denied as moot.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Corrigan, Malette, MacLaren, Teneyck, Daily, Bigger, Smith, Woods, Hubbard, Bender, and Hough will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants S. King, Anderson, Brown, Cusick, Knipe, Golleday, Unknown King, Williams, and Cushman.

An Order consistent with this Opinion will be entered.


Dated: November 20, 2015  /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE